The next case today is Jeffrey Joseph v. Lincare, Inc., Appeal Number 201396. Attorney Clifford, you may proceed. Thank you, and good morning again. Good morning. On March 27, 2017, Lincare fired Jeffrey Joseph four days after a potential Lincare customer physically confronted Mr. Joseph, called Mr. Joseph's supervisor to demand his termination and referred to him by his race, size, and Jamaican accent, and then wrote to the Lincare CEO and board of directors, demanding his termination and again referring to his race, size, and accent. Lincare says it fired Mr. Joseph for two reasons. One, because he disregarded or disobeyed his district manager, a man named Dennis Lizotte. Mr. Lizotte told him not to call the customer. And secondly, because he supposedly did not know when it was time to leave an office. In this case, Mr. Joseph presented sufficient evidence which contradicted the proffered reasons for termination. He met his burden on pretext. Race was a central issue during the confrontation with Mr. Butcher at the clinic and Mr. Butcher's racist comments to Dennis Lizotte and in his racist letter to Lincare. There is a plausible basis for a jury to conclude that Lincare was motivated by Mr. Joseph's race. Because a reasonable jury could find and infer from these facts that both pretext and race discrimination and return a verdict for Mr. Joseph, the district court's order granting summary judgment should be vacated and remanded for trial. Mr. Clifford, the district court wrote in its opinion that you were not, and perhaps could not under 1981, but you were not pursuing a cat's paw theory of liability that would make Lincare liable for Butcher's potential racial animus. Rather, you needed to prove that Lincare itself was motivated by racial animus. And as I understand, you've not challenged that description of your claim as not advancing a cat's paw theory. Well, the district court found in our favor on the 1981 argument raised by Lincare that we were relying entirely on an imputed inference from Mr. Butcher's conduct. So in that respect, I would say that we are not challenging that because that is not before this court on appeal. And we would, again, assert, as we have all along, that it was Lincare's own discriminatory animus that the jury could look to and find from an inference of race discrimination. And then how do you deal with the fact that Lincare hired your client just, what, two months before this incident, fully aware of his race and had no problems with him until the customer complained? Well, Dennis Lizotte, the manager, was the person that hired Jeffrey Joseph. And if you remember in the record, Mr. Lizotte was also the person that defended Jeffrey Joseph, saying this was out of character, he's a good guy, and he wouldn't do something like this. So Lincare is a massive organization. I don't think it was directly responsible for hiring him, but to the point of the fact that he was hired and he is a black man, I would only suggest that Lincare failed to do what it was supposed to, that is, investigate. It failed to properly weigh and consider anything that was in Mr. Joseph's favor, in other words, believe what he's saying. And instead of doing that, it raised to a conclusion based on an angry, racist letter from a potential customer and took his word over that of Mr. Joseph and even Mr. Lizotte's protest that he shouldn't be fired. So are you saying that it wasn't Lizotte who had the racial animus, but it was someone in the organization above him who had it that Lizotte then acceded to their wishes? Well, I'm not sure we need to prove an individual within the organization was the culpable party. I would say that Mr. Lizotte made some very inconsistent statements in his deposition testimony that contradicted Lincare's own positions, and I would say that as the person who delivered the news to Jeffrey Joseph, he bears some attention by a jury. But the organization itself, primarily through Mr. Lizotte and a woman named Tara Filo-Loose, the HR manager, who gave Mr. Lizotte the directive to terminate Jeffrey Joseph, I would say that she is the primary bad actor, if you will, and Mr. Lizotte was the secondary bad actor, if you will. So back to Judge Kayada's question. So you're saying that the manager, the HR manager above Lizotte, was acting based upon Butcher's letter and that she adopted his position and, therefore, the racial animus should be attributed to her? Indirectly, yes. The evidence, and, again, these are all disputed facts, which should go to the jury. So our argument to the jury would be that when Mr. Butcher wrote that letter on March 23rd, he sent it to the board, he sent it to the CEO, obviously Ms. Filo-Loose was aware of that, called Lizotte angrily and said, why hasn't this guy been fired, and then told him to fire her. And that's all on the record. These are not disputed facts, but the causation and the pretext issues are disputed and should go to the jury. And any reasonable jury could look at this and say, of course, they were motivated by his race. They got this letter saying this big, angry black man was confronting a customer and we're going to fire him. That's a race-based issue that the jury should and could take and make a verdict in either direction, whether it's formal in-care or for my client, but at least they should have the opportunity to weigh that evidence where the district court judge improperly weighed evidence, improperly applied the McDonnell-Douglas standard, and made errors in evidentiary rulings that went to the heart of this case. Those are the issues that should be vacated, and the issues that we're all talking about now are for the jury. So the letter contains allegations of misconduct, and it contains observations about your client's race. Yes. And you're saying that that, in and of itself, is sufficient to create a jury issue as to whether Ms. Thaluse was motivated by the racial aspect of the letter. That issue goes more to the causation in the prima facie case, whether or not Lincoln Care was motivated by his race. The issue that's on appeal is pretext, and those issues deal with the stated reasons for his termination, which have been contradicted and deemed inconsistent by record evidence. That is, if you look at Mr. Lizotte's deposition testimony, he says directly that he didn't tell Mr. Butcher not to call Mr. I'm sorry, he didn't tell Mr. Joseph not to call Mr. Butcher, and the reason that he was fired was not because of his conduct at the clinic but because of the phone calls, and all of that alone is contradictory, not to mention the fact that Ms. Thaluse and the evidence that the judge excluded gives additional inconsistent answers, and when coupled with the interrogatory answers, you have a very compelling case that these people are not being truthful, and that inference can be drawn, the inference of discrimination can be drawn from that fact alone in addition to the temporal proximity between what this letter was written on a Thursday and on a Monday he was fired without being questioned. I think those facts are what we're really focusing on. The causation and whether the imputed bad actions could be attributed to this person or the other are really not in dispute because those go to the issue of causation, and this case, at least as far as I'm concerned, at this level where we are today on pretext, is that was the issue that was determined. Sue Esponte, by the way, wasn't even argued by the Lincare. The decision that the judge made wasn't even raised by the defense during the summary judgment. As I understand it, correct me if I'm wrong, because I may have the facts wrong, but at all times and all points, all Lincare people pointed to the fact that he had contacted back Boucher or Butler or whatever his name was after the first unhappy interaction between them. They differed as to some of the details of that as to whether it was in person or by phone, whether he'd been told not to or whatever. But didn't they all point to that as being the reason for the discharge? With respect, Judge Canada, that's not correct. In the record that we present on pages 31 and 32 of the brief, these are the seven paragraphs that center on the differences between Mr. Lizotte's deposition testimony, the interrogatory answers, and other evidence that was excluded. Who pointed, help be specific, who pointed to something other than his renewed communication with the company? Well, those are the stated reasons for termination. The first one being that he shouldn't have contacted Mr. Butcher after Lizotte told him not to. And that was a key word and phrase, after Lizotte told him not to. Mr. Lizotte said at his deposition he never told that to Mr. Joseph. So that's inconsistent and contradictory. I think you're saying they all pointed to the renewed communication, but that the details varied and the details are material and important. That's correct, yes. As to that reason, and the other reason was he didn't know when it was time to leave an office and Mr. Lizotte testified at his deposition that he didn't consider any of Mr.  And that was the reason for termination of the company policy. Five minutes remaining. And where did he, I'm sorry, lost my train of thought there, that the reason, secondly, Company policy is where you are. Right. There was no company policy violation. So thank you. I'm not having a picture of anybody except the person who was actually talking. So I don't know if it's me or they. I have, when someone talks, the picture comes on right now, only the attorneys on, and I'm hearing all the arguments. So maybe that's good enough. Yeah. Well, if I may, and you can hear me, I'd like to proceed on just a couple of quick points. The three cases, or three of the many cases we cited in our brief are very much on point and very much consistent with past rulings in this court. One is Dominguez Cruz. That is a first circuit 2000 case, which states that the jury may infer discrimination when the defendant gives arguably inconsistent explanations. And the key in that is arguably inconsistent, not proven. We just, you know, inconsistent or absolutely inconsistent, but arguably inconsistent. The Tolan versus Cotton Supreme court case from 2014 warns that courts should not weigh evidence or ignore evidence that contradicts factual findings. And then this court's opinion in Ahmed versus Johnson quite clearly stated that it's for the jury and not the court to decide which side's evidence is more convincing. And at the core of this case and the core of this appeal is that the district court judge weighed evidence and found one version of events more believable than the other. And that's not up to the judge with all due respect. It is for the jury. And then what do you say? There's another argument that's being made that I'd like to know your response to, which is that, well, there were several different people involved in the decision. They may have had in their mind several different versions of the event, but that doesn't mean that any of them, that there's any inconsistency other than the fact that one person was doing it with one detail being emphasized in his mind and someone else was focusing on something different. Well, the same evidence that the district court used at the prima facie stage, and there were two central arguments. One is that he wasn't qualified for the job and the second focus on causation and the district court correctly noted and correctly ruled that a, it was a relatively low threshold for him to meet that burden. But that same evidence, and it's on page 15 of our brief, Mr. Butcher, whether he violated Lynn cares policies is in dispute. And there is at least as much evidence suggesting that he met or exceeded Lynn cares employment expectations overall. And it goes on to say that he rebuts that he was violating a policy that he was acting inappropriately and that Mr. Lazada agreed with him. Those facts alone, which supported the prima facie case on causation also support the issue of pretext. In addition to the inconsistent reasons for his termination. Plus the evidence of the prima facie case, plus the temporal proximity and the close causal connection between these is enough for Jerry to look at this and clearly or clearly, but arguably find them to be inconsistent and therefore pretextual. Are you resting? Wasn't sure if I had more time. I couldn't hear too well before. I'm happy to answer any questions. I think there's about a minute and a half left judge. I believe I reserved a couple of minutes for rebuttal. And if I haven't, I'd revert the rest of this time for the rebuttal. Thank you. Thank you, Mr. Clifford. At this time we could hear from attorney McCormick. Okay. May it please the court. I'm Gina McCormick arguing for the appellee Lincare Inc. Good morning. Good morning. This appeal turns on whether Mr. Joseph met his burden at the third stage of the McDonald Douglas burden shifting analysis to produce enough evidence to create a genuine issue of fact on two points. First, whether Lincare's articulated reason for his termination is pretextual. And second, whether the real reason for its decision was race discrimination. Can I interrupt this point and tell you what my concerns are about the decision in this case? This is a case decided by summary judgment. I have a list. I'm not going to read it now of material facts that I believe were in dispute and are still in dispute. And it includes basically a credibility findings. But other than that, the second point that I have difficulty with is the rulings that the court made on, on the documents that excluded on the basis of there being a violent, uh, not admissible because of a hearsay. I have problems with both of those situations. If you can take a little bit of your time and maybe, uh, sway my concerns, it would be appreciated. Yes, Your Honor. First with respect to the material facts, let me say that the most important fact in this case is that Mr. Joseph, after being told to leave the clinic, called the clinic back multiple times. That itself is in dispute because he claims he didn't call back. Your Honor. If you look at the record appendix page one 18 deposition, deposition of Jeffrey Joseph, page one 55 starting at lines for continuing through lines 10. He admits to calling the office about four times after he had left. So it cannot be disputed that he called back after he left. But doesn't he dispute the fact that he was not told not to call? He does dispute the fact that he was told not to call. And two points on that first, the district court's decision in which it granted summary judgment in this case did not depend on whether or not he was told not to call. It came down to the fact that he, as a sales representative of this company exhibited poor judgment in calling back a referral source multiple times after the referral source made it clear he did not want to do business with him any further. So his, his position was he was trying to make amends. Is there a specific policy that the company has that that would be inappropriate behavior? No, the company does not have a specific policy that are, that a sales representative should not try and make amends. And in fact, the company would encourage a sales representative to repair a relationship. However, here, the facts are that after he left the clinic, he went to the police station and made a report. He then called Mr. Butcher back and he testified that when he called Mr. Butcher back, and this is in his deposition testimony, he told Mr. Butcher that he had been disrespectful. They, there was back and forth. Mr. Butcher hung up and then Mr. Joseph continued to call him. What was the point? Go ahead, Jessica. When your client fired him though, you didn't your client at some point offers an explanation that he disobeyed a direct order from the supervisor. Yes, your Honor. And yet, and yet we have to assume for summary judgment purposes that he did not. That's correct, your Honor. But again, going back to the district court's decision in this case, the reasons provided by the employer for the termination relate back to the same two reasons. One, he did not know when to leave the clinic and two, he called back multiple times. If that's the case, why, when your client was asked formally to put down in writing and to testify under oath as to why it fired him, why did your client give a reason that we have to assume is false? He was told not to. First, your Honor, even if that reason for purposes of summary judgment is assumed to be false, it does not in any way then allow for an inference that the real reason here was race discrimination. The only evidence of any discriminatory animus on the basis of race in this case comes from Patrick Butcher, a third party, non-agent, non-employee of Lincare. And the plaintiff is trying to impute that individual's alleged discriminatory animus to Lincare, even though, as your Honor pointed out earlier, this is an employee, Mr. Joseph, who Lincare had just recently hired within two months prior to this incident, fully aware of his race, his physical appearance, put him in a sales representative position. And I would also like to correct, well, the company thought was an excellent employee until they got this call from Mr. Bouchard. And they tried then to please Mr. Bouchard by going along with him. Isn't that enough? The undisputed record evidence, your Honor shows that Mr. Bouchard testified that he, although in his letter did demand that, that Mr. Joseph be terminated upon speaking with a representative from the company so that he was satisfied with the company's phone call. He did not insist at that point that Mr. Joseph be terminated. The termination decision was also made by Mr. Lizotte and Ms. Together. And again, as plaintiff's counsel has, has stated today, Mr. Lizotte did say to Mr. Bouchard that he would not terminate an employee over the phone, that he did want to speak with him about what happened. And the record also shows that Mr. Lizotte was not in agreement to terminate Mr. Joseph until he learned that he called the clinic back repeatedly. And once he learned. Why is it a jury question? Was it up to the jury to determine whether in fact your client was influenced by the call from Bouchard using discriminatory language? Because that goes to the legal issue of whether the plaintiff can impute Mr. Butcher's discriminatory animus to Lynn care. And first of all, the plaintiff has waived that argument. The plaintiff has maintained all along that he is not imputing Mr. Butcher's discriminatory animus to Lynn care. And second, that's not an argument that can be made as a matter of law, both under section 1981, as well as the cat's paw theory. More generally, while a supervisor's discriminatory animus or a decision maker, who's in a position to influence influences a supervisor, that discriminatory animus can be imputed to the employer. The same is not true for a third party, such as Mr. Butcher, who has no connection to the employer. And your your honor, Judge Troy, I believe. At the beginning, you had said that you would also like me to address some of the evidentiary issues. And I can do that now, if you would like. Up to you. I have, I have some doubts about that. They're being hearsay. Maybe I don't know. That'll rule as well as I should. Well, your honor, as Lynn care stated in its brief on this appeal, Lynn care is not arguing that the documents constitute hearsay. Rather, Lynn cares, arguing that the documents were not properly authenticated prior to being submitted at summary judgment. And therefore, even though they were produced by you as part of discovery, that self authenticate the document. Your honor, Lynn care is not aware of any rule, either in the first circuit or in the district of Maine, that states a document that's produced as part of the discovery process is self authenticating or automatically admissible. And first of all, let me ask you a specific question. Do you maintain sitting here today that those documents that were produced and filed in this case are not authentic copies of the originals? Your honor, the question about authenticity with respect to these four documents was never asked. I don't think I'm hearing an answer. I am unable to answer that question because you have the originals, don't you? So assuming that the employer has the originals of these documents, your honor, and I'd just like to, I'm not talking about assuming it. I'm asking you as counsel for the employer, you've got the originals, your client has the originals. Yes. However, are you maintaining and you've seen the copies? Yes. And do you maintain that the copies are not authentic copies of the originals? I maintain that I have not asked that question of Miss below loose or Miss Adams. That wasn't. Are they authentic? Your honor. I am unable to answer that question. It has not been asked. You're not doing yourself any favors here. Your, your, your responsibilities when you're producing discovery is to exercise good faith in responding to interrogatories and requests for production of documents. Surely you would not have sent that before you how your discovery responses. That's correct. Your honor to the best of my knowledge, these documents or what they say they are. My point, and it may be a technical point, but I do think it's a very important point is that these documents were not whether through requests for admissions through a 30 B six deposition through individual depositions ever asked of the author, whether the notes on the documents were authored by that individual. If there were other things on the documents that were authored by someone else. And that is simply the point that I am making. Two of those documents, at least are in your company's letterhead. Are you denying the authenticity of even those documents? Your honor, I do not deny the, the authenticity about four minutes left. And again, I apologize. I'm not trying to be difficult and perhaps it is a technical point, but I do think it's an important point. That the authors and the, or neither the authors nor the company in its official capacity were ever asked to verify the authenticity through the discovery process. Full discovery was taken in this case. And also to take this one step further, were these documents to be admitted at a trial, they wouldn't automatically be admitted simply because they were produced as part of discovery. The party moving to admit the evidence would have to lay a foundation, would have to authenticate these documents. And that same standard for admissibility at trial applies at summary judgment. Well, that's that is counsel. Is that really the way it works? And is that a practical way? Isn't the way it works is that when, when opposing party produces documents on their own letterhead in response to a request for their documents, the receiving docky doc party assumes they're authentic and offers them a trial and they're admitted unless someone in good faith has a good faith basis to say they're not authentic and therefore raises an objection. And if he authored these at trial, you couldn't stand up and say objection, they're not authentic because you know, they're authentic.  Your Honor, then it's going to come down to whether or not the district court's exclusion of these documents amounts to an abuse of discretion because that is the standard that would be applied with respect to the exclusion of certain evidence at summary judgment. Well, if they excluded authentic documents, isn't that an abuse of discretion per se? An Arab laws and abuse of discretion counsel.  Your Honor. If this court were to determine that producing documents as part of discovery process means that a document is self-authenticating and this court excluded that self-authenticating document, then that would be an error. These documents were produced as part of interrogatories. Am I correct? Your Honor, they were produced as part of a discovery. Uh, excuse me, a response to a production for documents as well as referenced in interrogatory responses. What I would like, excuse me, for my own edification, I would like to read the interrogatory and also the motion for production of documents to see how it reads. Is that in the appendix? The interrogatories are in the appendix. The documents themselves are included in the appendix. The request for documents. No, I'm sorry. Is there any way that, um, you could also produce that as part of, uh, the 28 J or 10 J, whatever number it is. Yes, that would, that would, that would be fine. Um, but Your Honor, even if the court were to include these four documents, and consider them as part of the record on summary judgment, we still have the fundamental issue in this case, that there is no evidence of discriminatory animus on the part of Lynn Kerr in making this decision. Well, I'm not saying that this production of these documents decides the case, but I think it's part of, um, all scenario, particularly when these are issues of fact that are, may or may not be supported and may require the issue going to a jury. This is a preliminary statement, by the way, nothing that I've said here is final until the lady sings. We are approaching time. You will, you have a minute. Uh, I'll give you a minute to round up if you want. Uh, thank you, Your Honor. The last point that I would like to make is that, um, attorney Clifford in his initial argument was discussing the Dominguez Cruz v. Subtle Kareem Inc. case, um, in support of his argument that the, what he believes to be pretext in this case is sufficient to get him past summary judgment. A critical difference between this case and the Dominguez Cruz case is that in Dominguez Cruz, the court explained the court determined that there were inconsistent and contradictory explanations. And also went on to say that in that case, the quote evidence of age related comments could support an inference of pretext and discriminatory animus end quote. Again, here there's no evidence whatsoever of race based comments, decisions, or beliefs on the part of Lincare. Rather, it is entirely speculative and conjectural on the part of Mr. Joseph based on alleged discriminatory animus from a third party who was not a decision maker in this case. Thank you. We'll hear from other counsel now. At this time, we can hear from attorney Clifford and attorney McCormick. If you could mute your audio and video and judge, I think your microphone, you might need to bring it back up closer to your face. Judge Torway. Okay. There you are. Thank you. Yep. Can everybody see and hear me? Yes. Thank you. And I'll be brief. I'm going to take those points in reverse order and start with the evidentiary rulings. And rule 901 is a pretty simple rule of evidence. And it says the proponent has evidence to show they are what they purport to be. And in this case, for all the reasons you cited for all the reasons in our brief, the notion that these are not authentic documents is not only an abusive discretion, but is a ridiculous ruling. And I would ask that you vacate that as an abusive discretion. How does that actually help you? The documents, what is it in the document, those documents that make a difference? Well, three or four of the documents that were excluded include notes by Miss Philo Luce, in which she makes statements about the reasons for Mr. Joseph's termination. There's a note from Mr. Be specific, counselor. Excuse me? Be specific. Just give me a moment. And I'll tell you what those are. They are in the record. As here we go. An August, 2000 state the 17th statement by Mr. Lizotte and Miss Philo Luce. That is at 54, 55. The second is a March 27th, 2017 email between Miss Philo Luce and the head of HR, Paul Adams. And that's the one where Miss Adams says, doesn't he deserve his day in court? That's the head of HR telling the, her subordinate that this guy deserves a fair shake, which he never got. And then finally, Philo Luce's handwritten notes, summarizing her discussion with Mr. Lizotte on March 28th, the day after the termination, all relevant, all admissible as either admissions, any number of exceptions to the hearsay rule and clearly authentic. And as far as that rule, I don't want to push this because it's how does any, how does, how does anything within the, within the content of those documents help your pretext argument? Because they all offer evidence that is for the jury to decide. And what the reasons for his termination, the context on which Miss Philo Luce made her decision, what she did when she heard from Mr. Butcher, all of that was excluded. And the jury has the right to, to hear that. And for the record on summary judgment, the exclusion of that, so it's basically limited our ability to make arguments that contradicted the reasons or that supported the other reasons for pretext, such as the timing and things of that nature with the decisions. Those are relevant. Describe the documents categorically, but you haven't told us what is incriminating about. Well, isn't the issue is that it was, it was helpful. Okay. Well, for example, on the, the letter from Tara file a loose, she states that being that this employee didn't listen to Mr. Lizotte and returned to the office after his supervisor told him not to, I thought it best to exercise the probation period and terminate his employment. And again, that is being, that has been contradicted by Mr. Lizotte at his deposition testimony. When he says he never told Mr. Joseph not to go. And as judge Toria pointed out, this issue is about his disobeying the supervisor. And this is clear. Reply brief. They say Liz, that says he doesn't recall whether he gave him that directive or not. Well, I mean, the, the appellee's brief. And in our reply brief, we addressed that issue and that's not what the record reflects that the supervisor was directly questioned on that and said he'd never told him to do that. In addition to saying that he never based his decision on Joseph's conduct at the clinic. And that was the second reason for his termination was that he was inappropriate at the clinic. So both reasons are contradicted by Lizotte's testimony and these documents that were excluded. So that's, I don't know how much else you want to hear about the evidence, but I think that that was an incorrect ruling and an abusive discretion. There's something that I want to ask you before you leave. And that is, I asked your opponent to provide us with a document. That's not part of the appendix right now, which is the, that is, I'm not sure that I, I was correct technically doing that unless you agree to that. Oh, certainly the request for production of documents and the responses there too. But I don't think you need to get to that. I want to read how it reads to see the framework of how it was answered. Okay. And to supplement that point, rule 33 of the federal rules of evidence allows respondents to the interrogatories to incorporate by reference into their interrogatories, business records. And that's exactly what they did. Mr. Lizotte was questioned at his deposition directly by counsel by saying, I'm showing you exhibit eight or exhibit nine exhibit 10. Do you recall writing these? Do you recall seeing these? And the answer to those questions was yes. How could they be excluded as not authentic or admissions if he wrote them or he adopted them as his own statements? So that rule alone is sufficient to incorporate those as authentic. And I would argue as admissible as exceptions to the hearsay rule or not hearsay at all. Thank you. That's my time, but I'm happy to answer any other questions. I believe that that's it. Thank you. Thank you. That concludes the arguments for today. The session of the honorable United States court of appeals is now recessed until the next session of the court. God save the United States of America. And this honorable court council, you may disconnect from the meeting.